United States District Court
Southern District of Texas
**ENTERED**
September 13, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LOUISE IRVIN-JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-3224 |
| | § | |
| EQUIFAX INFORMATION SERVICES LLC, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This is a Fair Credit Reporting Act ("FCRA") action brought by plaintiff Louise Irvin-Jones ("Plaintiff") against defendants Equifax Information Services LLC; Experian Information Solutions, Inc.; Wells Fargo Bank, N.A.; Bank of America, N.A.; and Trans Union LLC ("Defendants"). Pending before the court is movant Mark Sanders' Plaintiff's Motion to Substitute Party ("Sanders' Motion") (Docket Entry No. 59). For the reasons explained below, Sanders' Motion will be granted in part and denied in part.

### I. Factual and Procedural Background

Plaintiff filed her Complaint under the Fair Credit Reporting Act against Defendants on September 11, 2018.[1] The Complaint seeks actual and punitive damages from Defendants for alleged violations

---

[1]Complaint, Docket Entry No. 1, p. 1.

of the FCRA.[2] Plaintiff died on June 21, 2019.[3] Plaintiff's son, Mark Sanders ("Sanders"), moved to substitute himself as the plaintiff under Federal Rule of Civil Procedure 25(a)(1).[4] To support his motion, Sanders submitted evidence that Plaintiff's Will named him executor of the estate and that he is trustee of the trust that is the estate's principal devisee.[5] Defendants filed a joint response opposing Sanders' Motion, contending that Sanders is not a "proper party" for substitution under Rule 25(a)(1) and that Plaintiff's claims for punitive damages under the FCRA do not survive her death.[6]

## II. Analysis

Under Rule 25 "[i]f a party dies and the claim is not extinguished, the court may order the substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative." Fed. R. Civ. P. 25(a)(1). The parties disagree as to whether Sanders qualifies as

---

[2]Id. at 12–18.

[3]Certificate of Death, Exhibit 1 to Other Exhibits Re: Motion to Substitute Party, Docket Entry No. 61, p. 2.

[4]Sanders' Motion, Docket Entry No. 59, pp. 1–2.

[5]Last Will and Testament of Louise Irvin-Jones ("Plaintiff's Will"), Exhibit 2 to Sanders' Motion, Docket Entry No. 59-2, p. 4; Third Amendment to Trust Agreement, Exhibit 3 to Plaintiff's Reply Memorandum in Support of Motion to Substitute Party ("Sanders' Reply Memorandum"), Docket Entry No. 63-1, p. 13.

[6]Defendants' Joint Response in Opposition to Plaintiff's Motion to Substitute Party, Docket Entry No. 62, pp. 2, 7.

a proper party for substitution.  Defendants contend that state law determines who qualifies as a proper party and argue that Sanders cannot be a successor or representative of the Plaintiff absent evidence a Texas court has appointed him such or that probate has been opened.  Sanders contends that state law does not control determination of proper parties under Rule 25 and, even if it does, Sanders' status as trustee of the trust named as devisee in Plaintiff's Will qualifies him under Texas law.  Assuming Sanders can be substituted, the parties also disagree whether Plaintiff's punitive damages claims survived her death.

**A.   Proper Party Under Rule 25(a)(1)**

If a party dies, Rule 25(a)(1) allows the court to order substitution of a proper party but does not specify which parties are proper.  Fed. R. Civ. P. 25(a)(1).  The rule is procedural, and federal courts must apply federal rules, not state law, to determine proper procedure for substitution following a party's death.  In re Baycol Products Litigation, 616 F.3d 778, 785 (8th Cir. 2010).  State law may govern the substantive question of who may qualify as a proper party.  Id.  But Rule 25 intends liberal substitution to be permitted and does not require the plaintiff to invoke state machinery to produce a representative of the estate. McSurely v. McClellan, 753 F.2d 88, 98 (D.C. Cir. 1985).  The proper inquiry is whether the party to be substituted could qualify under state law to be the plaintiff's successor or representative,

-3-

not whether the party has been appointed or recognized by the state. See In re Baycol, 616 F.3d at 787-88 (explaining that state substantive law defines who may be a party's successor, but state procedures do not control in federal court). For instance, a person named executor in a will may be a proper party under Rule 25(a)(1) even if the will has not been probated. Id. at 784.

Defendants' contention that Sanders cannot be substituted without producing a signed order from a probate court designating him as Plaintiff's representative therefore fails. Federal courts have uniformly held that Rule 25(a)(1) permits substitution without requiring state machinery such as the probating of a will. E.g., In re Baycol, 616 F.3d at 784; McSurely, 753 F.2d at 98; Kilgo v. Bowman Transportation, Inc., 87 F.R.D. 26, 27 (N.D. Ga. 1980). Sanders therefore need not be named Plaintiff's representative by a probate court to be substituted as the proper party in this action. The only relevant question under state law is whether he could be named as representative.

Under Texas law a person named executor in a decedent's will is qualified with highest priority to serve as the estate's representative. Tex. Est. Code § 304.001(a)(1). Plaintiff's Will contains a clause appointing Sanders as executor.[7] Texas also permits the principal devisee of the decedent to become the estate's

---

[7]Plaintiff's Will, Exhibit 2 to Sanders' Motion, Docket Entry No. 59-2, p. 4.

representative. Tex. Est. Code § 304.001(a)(3). Plaintiff's Will distributes all of the estate's property, with the exception of any S-corporation stock, to a trust of which Sanders is trustee.[8] This evidence establishes that Sanders is entitled to be the representative or successor of Plaintiff under Texas law. Accordingly, Sanders may be substituted as the plaintiff in this lawsuit under Rule 25(a)(1).

### B. Survival of Punitive Damages Claims

A party may only be substituted under Rule 25(a)(1) for claims not extinguished by the plaintiff's death. Fed. R. Civ. P. 25(a)(1). Plaintiff's Complaint alleges claims for punitive damages under the FCRA. Defendants contend that the claims for punitive damages are penal and therefore do not survive under federal common law. Sanders responds that the FCRA is a remedial statute, and that claims under the FCRA, including the punitive damages provisions, therefore survive.

Unless otherwise provided by statute, survival of a federal claim is a matter of federal common law. James v. Home Construction Co. of Mobile, Inc., 621 F.2d 727, 729 (5th Cir. 1980). Because the FCRA is silent as to the survival of the civil claims it creates, the issue must be decided based on federal

---

[8]Plaintiff's Will, Exhibit 2 to Sanders' Motion, Docket Entry No. 59-2, pp. 2-3; Third Amendment to Trust Agreement, Exhibit 3 to Sanders' Reply Memorandum, Docket Entry No. 63-1, p. 13.

common law. See 15 U.S.C. §§ 1681n, 1681o; James, 621 F.2d at 729. Under federal common law remedial actions survive the death of the plaintiff, while penal actions do not. Wheeler v. City of Santa Clara, 894 F.3d 1046, 1056-57 (9th Cir. 2018); James, 621 F.2d. at 730. "A remedial action is one that compensates an individual for specific harm suffered, while a penal action imposes damages upon the defendant for a general wrong to the public." United States v. NEC Corp., 11 F.3d 136, 137 (11th Cir. 1993).

Like several other federal statutes, however, the FCRA serves both remedial and penal purposes. Aetna Casualty & Surety Co. v. Sunshine Corp., 74 F.3d 685, 688 (6th Cir. 1996). The availability of a civil claim for actual damages for noncompliance with the FCRA has a clear remedial purpose. See 15 U.S.C. §§ 1681n(a)(1)(A), 1681o(a)(1). But the punitive damages available for willful violations under § 1681n serve to punish and deter. See id. § 1681n(a)(2); Northrop v. Hoffman of Simsbury, Inc., 12 F. App'x 44, 51 (2d Cir. 2001) ("The purpose of punitive damages under FCRA . . . is deterrence."). For these reasons, at least one district court has held punitive damages under the FCRA are penal and do not survive a plaintiff's death. Beaudry v. TeleCheck Services, Inc., No. 3:07-0842, 2016 WL 11398115 (M.D. Tenn. Sept. 29, 2016), at *16. Several district courts have held that the remedy of punitive damages or analogous penal damages provisions in other remedial statutes do not survive the plaintiff's death. See, e.g., Fulk v.

Norfolk Southern Railway Co., 35 F. Supp. 3d 749, 764 (M.D.N.C. 2014) (dismissing the punitive damages portion of an otherwise remedial Federal Railroad Safety Act retaliation claim); E.E.O.C. v. Timeless Investments, Inc., 734 F. Supp. 2d 1035, 1056-57 (E.D. Ca. 2010) (dismissing a liquidated damages portion of an otherwise remedial ADEA claim); Kettner v. Compass Group USA, Inc., 570 F. Supp. 2d 1121, 1134 (D. Minn. 2008) (dismissing liquidated damages portions of otherwise remedial ADA and Rehabilitation Act claims); Medrano v. MCDR, Inc., 366 F. Supp. 2d 625, 635 (W.D. Tenn. 2005) (dismissing the punitive damages portion of an otherwise remedial 42 U.S.C. § 1981 claim). The principle identified in these cases applies here. Regardless of whether FCRA has an overall remedial purpose, the punitive damages available under the statute serve a penal purpose. Plaintiff's claims for punitive damages under the FCRA therefore do not survive her death under federal common law.

Plaintiff contends that the penal nature of the punitive damages remedy is irrelevant and that only the nature of the overall statute controls survival. The primary authority Plaintiff relies on, In re Wood, 643 F.2d 188 (5th Cir. 1980), does not support this contention. That case involved a bankrupt plaintiff's action against a lender for statutory damages under the Truth in Lending Act ("TILA"), and the Fifth Circuit addressed whether the claim could survive the death of the plaintiff. Id. at 189-90.

The relevant section of the TILA in force at the time permitted a plaintiff to recover both actual and statutory damages against a creditor who failed to comply with the statute. Id. at 189; see 15 U.S.C. § 1640(a)(1)-(2) (1976) (amended 2009 and 2010). The court considered the specific purpose of the section allowing statutory damages, not the overall purpose of the TILA. In re Wood, 643 F.2d at 192. The court concluded that the section was remedial because the statutory damages were meant to encourage debtors to seek remedies under the statute and help compensate them in light of the difficulty of ascertaining actual damages. See id. (quoting with approval Porter v. Household Finance Corp. of Columbus, 385 F. Supp. 336, 342 (S.D. Ohio 1974)). In re Wood supports the court's conclusion that it should look to the purpose of the remedy in question rather than the nature of the overall statute in determining whether it is penal or remedial.

The court is also not persuaded by Sanders' argument that the TILA statutory damages in In re Wood are analogous to the FCRA's punitive damages and therefore that the latter are remedial. In re Wood considered a statutory damages provision awarding a specific, finite award of "twice the amount of any finance charge" or, for consumer leases, a percentage of the monthly payments but a total award of no more than $1,000. 15 U.S.C. § 1640(a)(2)(A) (1976). The Sixth Circuit emphasized the modest sums available when it held the TILA statutory damages were remedial. Murphy v. Household

Finance Corp., 560 F.2d 206, 210 (6th Cir. 1977). The FCRA, by contrast, allows for "such amount of punitive damages as the court may allow," limited only by due process. 15 U.S.C. § 1681n(a)(2); see Saunders v. Equifax Information Services, LLC, 469 F. Supp. 2d 343, 349 (E.D. Va. 2007), aff'd sub nom. Saunders v. Branch Banking and Trust Co. of Virginia, 526 F.3d 142 (4th Cir. 2008) ([N]either the Supreme Court nor Congress has . . . impose[d] a limit on punitive damages awards in the FCRA context[.]"); Exxon Shipping Co. v. Baker, 128 S. Ct. 2605, 2626 (2008) (holding due process limitations apply to all punitive damages awards). The FCRA's punitive damage provision is more akin to those in the Federal Railroad Safety Act, 42 U.S.C. § 1981a, and others with both remedial and penal provisions. Compare 15 U.S.C. § 1681n(a)(2) (liability for "such amount of punitive damages as the court may allow") with 49 U.S.C. § 20109(e)(3) ("[R]elief . . . may include punitive damages in an amount not to exceed $250,000.") and 42 U.S.C. § 1981a(b) (allowing punitive damages up to $300,000 for each complainant). The punitive damages allowed by the FCRA fall within this category of "plainly penal" punitive claims recognized by other courts rather than the modest statutory damages permitted by TILA. See, e.g., Fulk, 35 F. Supp. 3d at 764. Accordingly, the court concludes that Plaintiff's claims for punitive damages under the FCRA against the Defendants are penal and therefore do not survive her death.

### III. Conclusion and Order

For the reasons explained above, the court concludes that Sanders may be substituted as the plaintiff in this case under Rule 25(a)(1), but Plaintiff's claims for punitive damages against Defendants do not survive her death. Plaintiff's Motion to Substitute Party (Docket Entry No. 59) is therefore **GRANTED IN PART and DENIED IN PART**, and the court **ORDERS** that Mark Sanders be substituted for Plaintiff in this action except as to Plaintiff's claims for punitive damages. The Joint Motion to Stay Docket Control Order Deadlines (Docket Entry No. 64) is **GRANTED IN PART and DENIED IN PART**. The court will not stay the action, but the parties may submit an agreed amended docket control order by September 27, 2019.

**SIGNED** at Houston, Texas, on this 13th day of September, 2019.

---
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE